## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

AMINAT MCCLURE, an individual,
JUSTIN MCCLURE, an individual,
and AMINAT MCCLURE AND
JUSTIN MCCLURE, on behalf of
their minor children, A.M. and A.M.,

      Plaintiffs,

v.

MARK COUCH, an individual, and
COUCH MEDIA GROUP LLC, a
Georgia Limited Liability Company,

      Defendants.

CIVIL ACTION FILE

NO. 1:25-CV-3217-MHC

## ORDER

This case comes before the Court on Plaintiffs' Motion for Preliminary Injunction [Doc. 33], Defendant Mark Couch ("Couch")'s Emergency Motion for Temporary Restraining Order and Cross-Injunction ("Mot. for TRO") [Doc. 36], and Plaintiffs' Renewed Motion for Sanctions against Couch Media Group, LLC ("Renewed Mot. for Sanctions") [Doc. 42].

## I.   BACKGROUND

This case concerns the intellectual property rights to social media content, specifically music videos posted on YouTube and similar platforms, featuring the

parties' minor children.  On June 9, 2025, Plaintiffs Aminat McClure and Justin McClure, individually and on behalf of their minor children, A.M. and A.M., filed this suit asserting claims for copyright infringement pursuant to 17 U.S.C. § 501, trademark infringement pursuant to 15 U.S.C. § 1125, and violation of right of publicity and fraudulent misrepresentation under Georgia state law.  Compl. [Doc. 1] at 10-17.  The Complaint names as Defendants both Couch, an individual, and Couch Media Group LLC ("CMG"), a Georgia Limited Liability Company.  Id. at 1.

On June 30, 2025, Couch filed an answer to the Complaint and asserted affirmative defenses and counterclaims, purportedly appearing pro se on both his and CMG's behalf.  See Defendants' Answer, Affirmative Defenses, and Countercl. [Doc. 10].  On July 21, 2025, this Court entered an Order explaining that a business entity like CMG cannot appear in this Court pro se and directing CMG to obtain counsel within thirty (30) days of the Order.  See July 21, 2025, Order [Doc. 13].  Couch then filed a Motion to Stay Proceedings as for CMG Pending Retention of Counsel [Doc. 16], which this Court denied as moot given the extension of time to obtain counsel granted to CMG in the July 21, 2025, Order.  See July 29, 2025, Order [Doc. 19].  On August 18, 2025, Couch filed a "Motion to Dismiss CMG as a Defendant" [Doc. 24].  In response, on September

9, 2025, Plaintiffs filed their first Motion for Sanctions against CMG, arguing that CMG failed to comply with an order of the Court because no counsel for CMG had made an appearance within the deadline set by the Court in the July 21, 2025, Order. See Motion for Sanctions against CMG [Doc. 28]. On December 1, 2025, Plaintiffs filed the present Motion for Preliminary Injunction against both Defendants.

On December 3, 2025, this Court entered another Order denying Couch's Motion to Dismiss CMG as a Defendant, explaining again that CMG must have counsel make an appearance on its behalf or risk default, granting CMG an additional thirty (30) day window in which to have counsel make an appearance, and granting an extension of discovery in this case. See Dec. 3, 2025, Order at 3-5. The Court also denied without prejudice Plaintiffs' first Motion for Sanctions, finding that there was an insufficient showing of bad faith on the part of CMG at that time to impose sanctions based on CMG's failure to obtain counsel despite court order to do so. Id. at 5-7.

Rather than have counsel for CMG make an appearance by January 2, 2026, as ordered, Couch filed his Motion for TRO, an "Emergency Notice to Chambers Regarding Request for Temporary Restraining Order" [Doc. 35], and another "Notice of Voluntary Dismissal" in which he states "Defendant Couch Media

3

Group LLC hereby voluntarily dismisses itself from this action without prejudice. This Notice applies only to Defendant Couch Media Group LLC. . . . This dismissal is submitted in light of the Court's directive that corporate entities must be represented by licensed counsel." See Notice of Voluntary Dismissal [Doc. 41]. On February 2, 2026, Plaintiffs filed a Renewed Motion for Sanctions on the grounds that CMG has still failed to follow the Court's order to obtain counsel.

## II.    PLAINTIFF'S RENEWED MOTION FOR SANCTIONS

### A.    Appropriateness of Sanctions

In their Renewed Motion for Sanctions, Plaintiffs argue that sanctions are appropriate because CMG has now twice failed to comply with explicit orders of the Court by failing to obtain counsel and has now twice attempted to "voluntarily dismiss itself as a Defendant." See Renewed Mot. for Sanctions at 3-4. In its December 3, 2025, Order, this Court explicitly explained to CMG that

> A business entity who faces a lawsuit may not evade the suit against it by simply choosing not to find counsel. Rather than receive the benefit of dismissal from the action, a business entity in the defensive posture faces the possibility of default judgment if it fails to find representation and properly oppose the allegations. This risk is explicit in the language of aforementioned Local Rule 83.1, which reads "a corporation may only be represented by an attorney . . . failure to comply with this rule could result in a default judgment against the [party]." LR 83.1E(2)(b)(I), NDGa. (emphasis added). This rule is consistently applied across cases. See, e.g., Microsoft Corp. v. Moss, No. 1:06- CV-1670-JOF, 2007 WL 2782503, at *1 (N.D. Ga. Sept. 20, 2007) (entering default against an LLC for failure to comply with court order to obtain

4

> counsel); <u>Bakewell v. Fed. Fin. Group, Inc.</u>, No. L-04-CV-3538-JOF, 2007 WL 4079446,at *1 (N.D. Ga. Oct. 31, 2007) (entering default where defendant corporation failed to retain new counsel after withdrawal of previous counsel). Further, this Court explicitly warned CMG of the risk of default judgment in its July 21 Order. July 21 Order at 3 ("Failure to [retain counsel] may result in sanctions, including the entry of default against Couch Media Group, LLC, and the dismissal of any counterclaims asserted by it.").

Dec. 3, 2025, Order at 4-5. The Court then denied CMG's first attempt to dismiss itself as a Defendant and granted CMG additional time to seek counsel. <u>Id.</u>

CMG has again failed to have counsel appear within the time frame provided in the Order, despite this Court's clear instruction and second warning that "[f]ailure to do so may result in sanctions, including entry of default and potential default judgment against Couch Media Group, LLC and dismissal of any counterclaims asserted by Couch Media Group, LLC." <u>Id.</u> at 8. Furthermore, despite the Court's explanation, CMG has once again improperly attempted to dismiss itself by filing a "Notice of Voluntary Dismissal," making precisely the same argument (with no basis in law) that the Court has already rejected in response to Couch's Motion to Dismiss CMG as a Defendant. <u>See</u> Notice of Voluntary Dismissal at 1. In light of the foregoing, the Court finds that sanctions are warranted against CMG. <u>See</u> <u>Absolute Activist Value Master Fund Ltd. v. Devine</u>, 998 F.3d 1258, 1268 (11th Cir. 2021) ("[D]istrict courts have the inherent power to impose sanctions for failure to comply with their orders."); <u>see also</u> <u>Eagle</u>

Hosp. Physicians, LLC v. SRG Consultine, Inc., 561 F.3d 1298, 1306 (11th Cir. 2009) (citations omitted) ("A court may impose sanctions for litigation misconduct under its inherent power.").

### B.      Requested Relief

Plaintiffs' Renewed Motion for Sanctions asks the Court for the following relief: (1) deny Defendant's Notice of Voluntary Dismissal in its entirety; (2) order dismissal of CMG's counterclaims and enter a default judgment against CMG on Plaintiffs' claims; (3) award Plaintiffs attorneys' fees for the costs of bringing this motion;[1] and (4) grant Plaintiffs' Motion for Preliminary Injunction against CMG.[2] See Mot. for Sanctions at 14-16.

---

[1] As to Plaintiffs' request for attorneys' fees for costs associated with bringing the Renewed Motion for Sanctions, "Plaintiffs have not asserted a value associated with their reasonable attorney fees and have not provided the Court with detailed billing to support such a value.  Absent this documentation, the Court cannot grant reasonable attorney fees." Hi Ltd. P'ship v. Enjoy Mfg., Inc., No. 1:12-CV-01077-AT, 2012 WL 13014724, at *3 (N.D. Ga. Aug. 28, 2012) (citation omitted); see also Lewis v. City of Brunswick, No. 2:14-CV-122, 2015 WL 5316572, at *5 (S.D. Ga. Sept. 10, 2015) (denying attorneys' fees associated with bringing a successful sanctions motion because the moving party had not "provided any evidence of the amount of expenses they incurred.").

[2] The Court will discuss the merits of Plaintiffs' Motion for Preliminary Injunction against CMG and Couch in a forthcoming Order following a hearing on the issue.

6

First, Plaintiffs' request that the Court deny Defendant's Notice of Voluntary Dismissal is moot. The Notice of Dismissal is not a motion and therefore does not properly request any relief. See FED. R. CIV. P. 7(b)(1) ("A request for a court order must be made by *motion*.") (emphasis added). Further, as noted on the docket entry and discussed above, CMG's attempted dismissal is ineffective, as defendants may not dismiss themselves. See [Doc. Entry 41] ("Clerk's Note: Defendants cannot voluntarily dismiss themselves. Dismissal is invalid"). Accordingly, there is no action to be taken as to this Notice.

Second, Plaintiffs purport to seek a default judgment against CMG and dismiss CMG's counterclaims. The Court notes that the Renewed Motion for Sanctions conflates default and default judgment, often referring to them interchangeably. See, e.g., Mot. for Sanctions at 7-8 (acknowledging that "entry of default is an appropriate sanction" but concluding the argument with "Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Sanctions and enter default judgment as a sanction against CMG"). "It is important to note that an *entry of default* pursuant to Rule 55(a) is not the same thing as the entry of *default judgment* pursuant to Rule 55(b). As the Eleventh Circuit has observed, '[a]n entry of default is not a default judgment.'" White v. Hiers, No. 1:13-CV-2404-SCJ,

7

2014 WL 12638087, at *3 (N.D. Ga. Oct. 22, 2014) (citing Arango v. Guzman Travel Advisors, 761 F.2d 1527, 1530 (11th Cir. 1985).

Federal Rule of Civil Procedure 55 sets forth a two-step process for securing a default judgment. First, a party seeking default must seek the Clerk's entry of default pursuant to Rule 55(a). See Fed. R. Civ. Pro. 55; see also Frazier v. Absolute Collection Serv., Inc., 767 F. Supp. 2d 1354, 1360 n.1 (N.D. Ga. 2011) ("First, the clerk must enter a party's default. . . . [T]he party [seeking default judgment] must then apply to the court for a default judgment."). Second, after the Clerk has made an entry of default, the party seeking default judgment must file a motion for default judgment under Rule 55(b)(1) or Rule 55(b)(2). The clerk's entry of default, under Rule 55(a), is thus a prerequisite for default judgment to be granted under Rule 55(b). See Sun v. United States, 342 F. Supp. 2d 1120, 1124 n.2 (N.D. Ga. 2004) ("Plaintiff's Motion for Default Judgment is premature because he has failed to obtain the entry of default, a prerequisite to a default judgment."); DeForest v. Johnny Chisholm Global Events, LLC, No. 3:08-cv-0498-MCR-EMT, 2010 WL 1792094, at *7 (N.D. Fla. May 4, 2010), R&R adopted, No. 3:08-cv-0498-MCR-EMT, 2010 WL 2278356 (N.D. Fla. June 4, 2010) at *7 ("The law is clear that these two separate steps cannot be combined into one."); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2682

8

(3d ed. 2002) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).").

Default is the appropriate sanction for failure to comply with the Court's order in this case. See, e.g., Coastal Logistics, Inc. v. Aim Steel Int'l, Inc., No. CV 415-177, 2016 WL 6871253, at *1 (S.D. Ga. Nov. 21, 2016) (granting the plaintiff's motion for entry of default after the corporate defendant failed to respond to the court's order to have new counsel enter an appearance on its behalf). The Court has repeatedly ordered CMG to obtain counsel, and CMG has repeatedly failed to comply. Additionally, CMG may not, without counsel, file an answer or assert counterclaims against Plaintiffs, so the Court will strike CMG's purported answer and counterclaims. See Hull v. Spalding, No. 1:25-CV-01598-SEG, 2025 WL 2271995, at *2 (N.D. Ga. Apr. 10, 2025) (citations and alterations omitted) ("To the extent Plaintiff is attempting to assert claims on 2 Big Legacy's behalf, he cannot do so since a business entity such as a limited liability company is an artificial entity that cannot appear pro se in legal proceedings but instead must be represented by counsel.").

In sum, Plaintiffs' Renewed Motion for Sanctions is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** to the extent that it seeks a clerk's entry of default against Defendant Couch Media Group, LLC and seeks to

9

strike Defendant Couch Media Group, LLC's answer and counterclaims. The

Motion is otherwise **DENIED**.

### III.    COUCH'S MOTION FOR TEMPORARY RESTRAINING ORDER

Couch filed his Motion for TRO on December 10, 2025.[3] In said Motion for

TRO, Couch argues that he has established a likelihood of success on the merits on

his counterclaims against Plaintiffs, which include (1) Fraudulent Digital

Millennium Copyright Act ("DCMA") Takedowns pursuant to 17 U.S.C. 512(f);

(2) Tortious Interference with Business and Contracts; (3) Defamation; and (4)

False Light. See Defs.' Answer, Affirmative Defenses, and Countercl. at 9-11;

Mot. for TRO at 6-7.

In order to obtain either a temporary restraining order or a preliminary

injunction, a claimant must demonstrate: (1) a substantial likelihood of success on

the merits; (2) that irreparable injury will be suffered if the injunction is not

granted; (3) that the threatened injury to Plaintiff absent an injunction outweighs

the damage to Defendants if an injunction is granted; and (4) that granting the

injunction would not be adverse to the public interest. Schiavo ex rel. Schindler v.

---

[3] The Motion for TRO was also filed pro se. Due to the principles discussed above, the Court's analysis on this Motion for TRO applies only to Couch as an individual Defendant, not CMG as an entity Defendant.

Schiavo, 403 F.3d 1223, 1225 (11th Cir. 2005); Four Seasons Hotels & Resorts,

B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003).  A

preliminary injunction is "an extraordinary and drastic remedy" and should be

granted only when the movant clearly carries the burden of persuasion as to each

of the four prerequisites.  Four Seasons, 320 F.3d at 1210 (citations omitted).  The

purpose of a preliminary injunction is to maintain the status quo until the court can

enter a final decision on the merits of the case.  Bloedorn v. Grube, 631 F.3d 1218,

1229 (11th Cir. 2011).

The Eleventh Circuit instructs that a substantial likelihood of success on the

merits is "generally the most important [factor]" in deciding whether temporary

injunctive relief should be granted.  Schiavo, 403 F.3d at 1232.  "The Court need

not conclude that plaintiffs have carried their burden of proof on any single claim

or on all claims, only that the proof supports a substantial likelihood of success on

at least one claim or theory which in turn would support" temporary injunctive

relief.  Atlanta Sch. of Kayaking, Inc. v. Douglasville-Douglas Cnty. Water &

Sewer Auth., 981 F. Supp. 1469, 1472 (N.D. Ga. 1997).

The Court finds that Couch has not established a substantial likelihood of

success on the merits of any of his counterclaims.  Couch fails to show substantial

11

likelihood on the merits of any claim pursuant to the DCMA. Couch asserts a

counterclaim under Section 512(f) of the DMCA, which reads:

> Any person who knowingly materially misrepresents under this section—
> **(1)** that material or activity is infringing, or
> **(2)** that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

DMCA § 512(f).

This claim appears to be based on the premise that when Plaintiffs reported

the at-issue videos to YouTube, they were "knowingly misrepresent[ing]" that they

had rights to the material upon which the videos were infringing. Id.; Defs.'

Answer, Affirmative Defenses, and Countercl. at 9 (alleging that "Plaintiffs

knowingly submitted false copyright infringement notices to Youtube and other

platforms claiming ownership over content solely authored and produced by

Defendant Mark Couch."). However, Couch offers only conclusory arguments that

Plaintiffs have "[f]iled false copyright and DMCA claims against music they did

not create" and that he is the "sole creator and owner of the music, lyrics,

recordings, choreography, and videos at issue." Mot. for TRO at 2, 6. While the

12

nature of the original business arrangements that spawned these videos involving both Couch's and Plaintiffs' minor children is unclear at this early stage of the litigation, Couch has not provided any evidence that he *alone* owns the legal rights to the videos or music sufficient to make Plaintiffs' DMCA claims of their ownership rights knowing misrepresentations. To the contrary, Plaintiffs have filed evidence suggesting that they possess copyrights from the U.S. Copyright Office that cover at least some of the disputed videos. See, e.g., Copyright Certificate of Registration No. PA 2-506-507 [Docs. 33-6]. And on a more basic level, Plaintiffs' children are also visible in the content, undermining Couch's position that the content was "solely authored and produced" by him. Defs.' Answer, Affirmative Defenses, and Countercl. at 9. The allegations and evidence before the Court at this time do not support a finding that Plaintiffs were "knowingly misrepresent[ing]" their ownership rights in the disputed property by reporting the videos to the service provider. DMCA § 512(f). Accordingly, Couch has not proven a substantial likelihood of success on the merits as to his first counterclaim under DMCA.

For similar reasons, Couch has also failed to show a substantial likelihood on the merits of his state law counterclaims for tortious interference with business and contracts, defamation, and false light. Couch does not specify what statements

or actions on Plaintiffs' part support these claims in his Motion for TRO. <u>See</u>

<u>generally</u> Mot. for TRO. Instead, he argues generally that Plaintiffs "have no

written contracts giving them rights; provided no creative contributions; admitted

they did not want to be involved with the music; have had DMCA challenges

resolved against them; and had a prior lawsuit dismissed.[4] Mot. for TRO at 6.

This argument is nothing more than Couch's conclusory assertion that he owns the

intellectual property instead of Plaintiffs; none of these allegations are clearly

related to the elements of Couch's state law counterclaims.

Looking to Couch's Answer, Affirmative Defenses, and Counterclaims for

context, Couch's state-law counterclaims appear to be based on Plaintiffs'

statements to others that Plaintiffs own the intellectual property that is in dispute.

<u>See, e.g.</u>, Defs.' Answer, Affirmative Defenses, and Countercl. at 9 ("Plaintiffs?

[sic] actions interfered with Defendant?s [sic] existing and potential business

relationships, including digital distribution (TuneCore, DistroKid), major label

negotiations (BlackSmoke/Universal), and a $200,000 investment opportunity.

Plaintiffs knowingly used legal filings and DMCA claims to obstruct Defendant?s

[sic] contractual opportunities"); <u>id.</u> at 9-10 ("Plaintiffs publicly and privately

---

[4] Plaintiffs' previously-filed lawsuit was voluntarily dismissed without prejudice. <u>See</u> <u>McClure et al. v. Couch et al.</u>, No. 24-CV-5882-JPB (N.D. Ga. Mar. 18, 2025).

14

communicated allegations of copyright theft and misconduct against Defendants that were knowingly false"). However, as discussed above, Couch has not shown a substantial likelihood of proving that Plaintiffs do not have ownership rights in the disputed videos and music. By extension of that rationale, Couch has not shown a substantial likelihood of success on the merits of any of these state law claims, which rely on Plaintiffs' alleged statements of ownership of the intellectual property being malicious or knowingly false. Specifically, a Georgia tortious interference with contractual relations claim requires a showing that the other party "acted purposefully and malice with the intent to injure." See, e.g., Deotare v. Wells Fargo Bank, N.A., No. 1:17-CV-699-WSD, 2018 WL 1470897, at *8 (N.D. Ga. Mar. 26, 2018) (applying Georgia law). Georgia defamation[5] and false light claims require some showing that the statements were "false." Smith v. Stewart,

---

[5] To the extent that Couch argues that Plaintiffs defamed him by filing this or any other legal action, such a claim is barred by absolute immunity under Georgia law. O.C.G.A. § 51-5-8 extends absolute privilege to "[a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought . . . However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous." "Absolute privilege is based upon a public policy determination that the importance of one's ability to be free from restraint when engaged in legal processes outweighs a defamed party's right to seek legal redress. Thus, we have generally described the coverage of the privilege to include . . . acts of legal process." RCO Legal, P.S., Inc. v. Johnson, 347 Ga. App. 661, 669-70 (2018) (internal citations omitted).

15

291 Ga. App. 86, 91 (2008) ("A cause of action for defamation consists of four elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm."); Ass'n Servs., Inc. v. Smith, 249 Ga. App. 629, 633 (2001) ("To establish a claim of false light, a plaintiff must establish the existence of false publicity that depicts the plaintiff as something or someone which she is not, then the plaintiff must demonstrate that the false light in which she was placed would be highly offensive to a reasonable person.").

In sum, evaluating the allegations and evidence currently before the Court, Couch has not shown a substantial likelihood of success on any of his counterclaims. Accordingly, Couch's Motion for TRO is **DENIED**. See Four Seasons, 320 F.3d at 1210 (preliminary injunctive relief should be granted only when the movant clearly carries the burden of persuasion as to each of the four prerequisites).

## IV.    PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Also pending before the Court is Plaintiffs' Motion for Preliminary Injunction. Although neither party requests a hearing on this issue, Rule 65(a) of the Rules of Civil Procedure indicates that courts may issue a preliminary

16

injunction "only on notice to the adverse party." FED. R. CIV. P. 65. "The United States Supreme Court has noted in passing that '[t]he notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition.'" All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1538 (11th Cir. 1989) (citing Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 432 n. 7 (1974)). Accordingly, the Court will conduct a preliminary injunction hearing on Plaintiffs' Motion for Preliminary Injunction on Wednesday, April 15, 2026, at 10:00 A.M. in Courtroom 1905, United States Courthouse, 75 Ted Turner Dr., S.W., Atlanta, Georgia.

## V.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant Mark Couch's Emergency Motion for Temporary Restraining Order [Doc. 36] is **DENIED**.

It is further **ORDERED** that Plaintiffs' Renewed Motion for Sanctions [Doc. 42] is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** to the extent it seeks a clerk's entry of default against Defendant Couch Media Group, LLC and seeks to strike Defendant Couch Media Group, LLC's answer and counterclaims. The Motion is otherwise **DENIED**.

17

The Clerk is **DIRECTED** to strike Defendants' Answer, Affirmative Defenses, and Counterclaims [Doc. 10] only as to Defendant Couch Media Group, LLC, but not as to Defendant Mark Couch.

The Clerk is further **DIRECTED** to enter default as to Defendant Couch Media Group, LLC.

The Clerk is further **DIRECTED** to transmit a copy of this Order to Defendant Couch Media Group, LLC at the following address: 1465 Loch Lomond Trail SW, Atlanta, GA 30331. This Order serves as notice to Defendant Couch Media Group, LLC, that its failure to retain counsel and respond to any future motion for default judgment within 14 days of its filing may lead to entry of default judgment against Couch Media Group, LLC.

It is further **ORDERED** that this Court will hold a preliminary injunction hearing on Plaintiffs' Motion for Preliminary Injunction [Doc. 33] on Wednesday, April 15, 2026, at 10:00 A.M., in Courtroom 1905, United States Courthouse, 75 Ted Turner Dr., S.W., Atlanta, Georgia.

**IT IS SO ORDERED** this 23rd day of March, 2026.

MARK H. COHEN
United States District Judge

18